## No. 17,475.

KENNETH A. HERON *v.* THE CITY OF DENVER, ET AL.
(283 P. [2d] 647)

Decided May 9, 1955.

Mr. GEORGE K. THOMAS, for plaintiff in error.

Mr. JOHN C. BANKS, Mr. EARL T. THRASHER, Mr. LESLIE A. GROSS, for defendants in error.

*En Banc.*

MR. JUSTICE HOLLAND delivered the opinion of the Court.

ARTICLE XX of the State Constitution grants to the people of Denver "The full right of self-government in both local and municipal matters * * *." The people of Denver adopted a charter in which the city council is given the power to enact and provide for the enforcement of all ordinances necessary to protect life, health and property, preserve and enforce good government for the general welfare, order and security of the city and its inhabitants. Pursuant to these grants of power and authority the city council enacted an ordinance known and referred to as Denver Building Code, the pertinent part of which is chapter 3, section 301 (e), which is as follows:

"(e) Plans and Specifications. Responsibility for Design and Supervision of Construction. Only an architect licensed in the State of Colorado may prepare and submit plans and specifications for a building or structure of a public or semi-public nature or for any other building or structure exceeding one story or 20 feet in height, excepting buildings hereinafter designated as industrial or heavily loaded buildings. A building of a public or semi-public nature is a building frequented by the public or into which the public is invited for business, recreational, educational, religious or other similar purposes. Examples of public and semi-public buildings include office buildings, stores, apartment houses, hotels, hospitals, churches, schools, museums, libraries, art galleries, theaters, assembly halls and governmental buildings. A licensed architect who is employed by the owner shall be responsible for the supervision of the construction of the buildings or structures to which such plans and specifications pertain.

\* \* \*

"Plans and specifications where required by this code to have been prepared by an architect or engineer, shall bear the seal and signature of the licensed architect or

professional engineer responsible for their preparation."

In December of 1952, plaintiff in error, a registered and licensed professional engineer, was consulted and directed by the owners of certain lots to prepare plans and specifications for a nursing home to be erected on lots owned by his clients. He prepared two sets of plans, two sets of specifications and a survey plat for the construction of the proposed project, placed his seal thereon and on January 7, 1953, submitted same to the City Building Department and after appraisal for construction cost, was given approval by the zoning board. Certain changes of plans were suggested, which were made and refiled. The chief building inspector rejected the entire application for building permit and returned plaintiff's tendered payment for the permit fee. He then, in writing, requested the chief building inspector to proceed so that the permit could issue. On May 21, 1953, the chief building inspector acknowledged the request and referred plaintiff to the section of the building code hereinbefore set out, which provides that only an architect may prepare and submit plans and specifications for a *public or semi-public* building.

Thereafter, and in June, plaintiff filed a complaint in the district court asking, among other things, a mandatory injunction commanding the building inspector to analyze and approve his plans and specifications so that a permit could issue. In November the trial court ordered plaintiff to furnish the building inspector with full specifications and corrected plans. This apparently was done and such are now exhibits herein.

It is alleged in the complaint that the building inspector arbitrarily, capriciously, wrongfully and unlawfully refused to place his official approval on the plans and specifications submitted by plaintiff, and this refusal is because the plans and specifications do not bear the seal of a licensed architect, but instead bear the seal of plaintiff as a registered professional engineer in Colorado. It further is alleged that the Denver Building

Code, requiring the seal of licensed architects, is arbitrary and constitutes an unlawful interference with plaintiff's practice of professional engineering in Colorado, as defined by chapter 100 of the 1953 Session Laws.

The city and the chief building inspector answered the amended complaint and as a first defense alleged that the complaint fails to state a claim against defendants upon which relief could be granted. For a second defense, certain admissions and denials are made and it is specifically alleged that chapter 100 of the Session Laws of 1953 does not authorize plaintiff, as a registered engineer, to plan and design a *public* building; further that the applicable provisions of the city ordinance or building code, herein set out, prohibit plaintiff, as a registered professional engineer, from preparing and submitting plans and specifications relating to a public building.

Upon submitting of this matter to the trial court by defendants' motion for summary judgment, it was contended that plaintiff had not exhausted the mandatory administrative remedy provided in the building code and therefore is precluded from invoking the jurisdiction of the court.

On submission of the matter to the trial court, it found and determined in substance that the ordinance or building code which controls in the matter was passed in the exercise of the police power of the council for the protection of the inhabitants of the city; that the ordinance was not arbitrary, unreasonable or discriminatory; and further, the contention that the engineering Act of the 1953 Session Laws, chapter 100, gives plaintiff the right to practice architecture is without reason, and in accordance with the views thus expressed, dismissed plaintiff's supplemental complaint and entered judgment in favor of defendant city, its mayor individually, and the building inspector, individually and officially. Plaintiff prosecutes the writ of error herein upon the main contention that the provision of the

building code of Denver, which provides that only an architect may prepare and submit plans and specifications for public and semi-public buildings, is class legislation and an unlawful restriction upon plaintiff as an engineer in his right to practice professional engineering under his Colorado license; that the trial court erred in finding that the city council had authority to enact such an ordinance; and as a final contention urges that if the practice of engineering overlaps the practice of architecture under state law, such overlapping service may be rendered by either professional licensee.

That the provisions of the Denver Building Code here involved are a reasonable exercise of the city's police power is beyond question. If the ordinance, in the wisdom of the city council, was necessary for the protection of the inhabitants of the city and of such of its people as might live in or congregate in public or semi-public buildings, then courts must give approval to such action. The charter provision of the city hereinabove quoted was a general grant of power, and when the council determined that "only" an architect licensed by the State of Colorado may prepare and submit plans and specifications for a building or structure of public or semi-public nature, it acted well within the grant of power. The reason for this on the part of the council clearly appears on the face of the ordinance, which speaks for itself, and discloses the purpose when this requirement is confined to public and semi-public buildings. Could it be made more plain that it was solely for the protection of the health and safety of the people who might make use of the buildings? This discloses a reasonable and rational relationship to the objects of the police power intended to be achieved, and according to the rule accepted long ago, courts will not interfere with the exercise of municipal power by enjoining any reasonable regulations in the interest of public safety, and particularly where there is no interference with private rights. Our only concern in the consideration of such an

506

ordinance is to see that it does not transcend the bounds of reason. If the question of whether or not the ordinance here in question is class legislation is at all debatable, the legislative judgment of the city council must control.

■ Plaintiff in error seems to place much reliance upon the rights granted him under the statutes of Colorado relating to engineers and the practice of engineering. The pertinent statute so relied upon is a part of section 2, chapter 100, '53 S.L., and is as follows:

"The term 'practice of engineering' within the meaning and intent of this Act, shall mean any professional service or creative work requiring engineering education, training, and experience and the application of special knowledge of the mathematical, physical, and engineering sciences of such professional services or creative work as consultation, investigation, evaluation, planning, design, and supervision of construction for the purpose of assuring compliance with specification and design, in connection with any public or private utilities, industrial buildings, structures, machines, equipment, processes, works, or projects."

No place in this statute do we find any license or authority to the planning, designing or supervision of construction of "public or semi-public buildings." It is confined to "public or private utilities, industrial buildings, structures, machines, equipment, processes, works, or projects." This makes a clear distinction between the types of building, and the Denver ordinance does not in any way overlap in this regard. This view is supported by the fact that it is shown that on the same day that the Legislature enacted the statute relating to engineers and their practice, it passed another statute known as the Architects Act, and it is provided therein that nothing in the Act shall operate as to infringe upon the practice of professional engineers; and further, that nothing in the Architects Act shall apply to the planning, design, construction, enlargement or alteration of any

industrial building. Tersely stated, engineers are confined to the industrial and structural field, while architects only are committed to the field of public or semipublic buildings. Section 220 of the so-called building code ordinance creates a board of appeals and requires that any person aggrieved by any decision or order of the chief building inspector may appeal such decision or order to the board of appeals and that such appeal must be perfected within thirty days from the date of the order from which appeal is made, and that within thirty days after the entry of any decision or order of the board of appeals, any person who is aggrieved by such decision or order may seek a review of the same in a court of record, and that the review shall not be extended further than to determine whether or not the board of appeals has exceeded its jurisdiction or abused its discretion.

Plaintiff in error contends that the chief building inspector is required only to perform a ministerial act and, in that case, it was not necessary to present the matter to the board of appeals. Where administrative remedies are provided, this policy of orderly procedure should be followed, particularly when the matter of which complaint is made, or by which the party is aggrieved, is such as is within the province of the administrative authority to correct. Unless the administrative remedies are exhausted it never can be known but what a correction would ensue if the authorities were given full opportunity to pass upon the matter. This Court has adhered rather strictly to the requirement of exhaustion of administrative remedies before the Court will take jurisdiction. It was error for the trial court to deny defendants' motion for summary judgment, which motion was based upon plaintiff's failure to exhaust the administrative remedies provided.

We are impressed by the reasoning advanced by the trial court in its findings and order of judgment, and since the conclusions of law are in harmony with the

508

views herein expressed, the judgment entered by the trial court is correct and therefore is affirmed.